LIU, J.,
Concurring. — I agree with the court’s rejection of defendant’s claim under Batson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (Batson) that the prosecutor’s strike of Prospective Juror P.M. was racially motivated. But I disagree with the court’s reasoning.
After defense counsel objected to the prosecutor’s strike of P.M., the trial court, at the first stage of Batson’s three-stage analysis, found that no prima facie case of discrimination had been shown. The trial court nevertheless invited the prosecutor to state his reasons for the strike. The prosecutor accepted the invitation and gave his reasons. After hearing the reasons, the trial court denied the Batson motion apparently on the basis of its initial finding that defendant had made no prima facie showing of discrimination.
Today’s opinion disposes of defendant’s claim at the first stage of the Batson inquiry, even though the prosecutor stated his actual reasons for the strike. In so doing, the court opts to hypothesize why the prosecutor would have wanted to strike P.M. (maj. opn., ante, at p. 470) when the actual reasons stated by the prosecutor are in the record before us (id. at p. 468). The court traces this odd approach to People v. Welch (1999) 20 Cal.4th 701, 746 [85 Cal.Rptr.2d 203, 976 P.2d 754], a decision that predates Johnson v. California (2005) 545 U.S. 162 [162 L.Ed.2d 129, 125 S.Ct. 2410] (Johnson). In my view, the reasoning of Johnson entails a different rule: A prosecutor’s statement of actual reasons necessarily moves the Batson inquiry to the third stage. Here the trial court should have evaluated whether the stated reasons were genuine or pretextual, and its failure to do so provides no reason for this court to commit the same error.
While recognizing that a prosecutor’s statement of reasons can render moot the preliminary issue of whether the defendant has made a prima facie *492 showing, the court says this rule “applies only when the trial court explicitly or implicitly evaluates the prosecutor’s stated reasons.” (Maj. opn., ante, at p. 469.) This limitation misapprehends the purpose of Batson’s three-stage framework: “The Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. [Citation.] The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question.” (Johnson, supra, 545 U.S. at p. 172.)
The first stage of the Batson inquiry asks whether the defendant has raised an inference of discrimination. (Johnson, supra, 545 U.S. at p. 170.) “[W]here the explanation for a prosecutor’s strike of a particular juror is so obvious that there is little or no reason to think anything else could have motivated the strike,” a trial court may reject a Batson claim without requiring the prosecutor to say anything. (People v. Harris (2013) 57 Cal.4th 804, 872 [161 Cal.Rptr.3d 364, 306 P.3d 1195] (cone. opn. of Liu, J.); see id. at p. 873 (cone. opn. of Liu, J.) [“trial courts need not and should not subject prosecutors to idle inquiry . . .”].) But if a prima facie case has been shown, then the analysis moves to the second stage: The prosecutor must give a reason for the strike. (Johnson, at p. 168.)
Thus, the purpose of Batson’s first stage is simply to decide whether the prosecutor must state a reason for the strike. This decision becomes moot once the prosecutor has stated a reason for the strike, whether the prosecutor was required to do so or not. Once the prosecutor has stated a reason, even if voluntarily, the cat is out of the bag, and the Batson analysis moves to the third stage. The prosecutor must “stand or fall on the plausibility of the reasons he gives,” and courts must evaluate those reasons in light of “ ‘all relevant circumstances.’ ” (Miller-El v. Dretke (2005) 545 U.S. 231, 252, 240 [162 L.Ed.2d 196, 125 S.Ct. 2317]; see Holloway v. Horn (3d Cir. 2004) 355 F.3d 707, 723-724 (Holloway) [“[T]he question of whether a prima facie case has been established becomes moot . . . when the prosecutor provides explanations for the strikes despite the absence of a request from the trial court .... ‘[0]nce a prosecutor attempts to explain a peremptory challenge, we believe the trial and reviewing courts should look to the entire record to determine if intentional discrimination is present.’ ” (citation omitted)].)
This approach is consistent with the burden-shifting framework used to evaluate claims of intentional discrimination under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), a framework on which Batson expressly relied. (See Batson, supra, 476 U.S. at p. 94, fn. 18.) In explaining “the operation of prima facie burden of proof rules” (ibid.), Batson cited U. S. Postal Service Bd. of Govs. v. Aikens (1983) 460 U.S. 711 [75 *493 L.Ed.2d 403, 103 S.Ct. 1478]. There the high court, in an opinion by then Justice Rehnquist, explained that “[t]he prima facie case method” is “ ‘merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.’ [Citation.] Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The [trial] court has before it all the evidence it needs to decide whether ‘the defendant intentionally discriminated against the plaintiff.’ [Citation.]” (Id. at p. 715.)
Under today’s opinion, the prosecutor’s voluntary explanation of a contested strike does not waive a favorable first-stage ruling; it simply makes a record that may justify the strike if the first-stage ruling is found erroneous on appeal. (Accord, Robinson v. United States (D.C. 2006) 890 A.2d 674, 682-683.) But what if a trial court correctly finds no prima facie case at the first stage, yet the prosecutor volunteers a reason that is suspicious? The court suggests that if a prosecutor volunteers a “facially invalid” reason, that would present a different case. (Maj. opn., ante, at p. 470, fn. 5.) But what if the prosecutor offers a facially valid reason that is contradicted by the record of voir dire? Suppose, in this case, that the prosecutor had said, “I struck RM. because he said he’s not sure he supports the death penalty,” when in fact the record showed that P.M. expressed unequivocally strong support for the death penalty. The court’s approach does not require the trial judge to evaluate such a facially valid yet unsubstantiated reason. Nor does it require or even permit a reviewing court to do so if the trial judge has made only a first-stage ruling. Again, “[t]he Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process.” (Johnson, supra, 545 U.S. at p. 172.) Once those “actual answers” have been produced, they necessarily become the focus of the Batson inquiry. Otherwise, courts could “ ‘effectively close their eyes to [a prosecutor’s improper reasons] by simply deciding that the defendant has not made out a prima facie case.’ ” (Holloway, supra, 355 F.3d at p. 724.) Neither today’s opinion nor any case on which it relies answers this concern.
More fundamentally, the court’s felt need to distinguish cases where a prosecutor volunteers an improper reason reveals the illogic of its approach. For the very premise of any such distinction is that the case now before us is not one where the prosecutor has volunteered an improper reason. But how could a trial court or a reviewing court possibly know that without having “explicitly or implicitly” evaluated the reason stated by the prosecutor? (Maj. opn., ante, at p. 469.) If courts are to distinguish between proper and improper reasons, then the Batson inquiry has necessarily moved past the first stage to the third stage.
*494 Importantly, the facial validity of a volunteered reason cannot (backwardly) inform a first-stage ruling. Batson’s three-stage inquiry at no point authorizes courts to merely peek at the credibility of a prosecutor’s stated reason without fully evaluating it in light of all relevant circumstances. Such an approach would conflate the first and third stages of the Batson framework since the first stage examines not whether a prosecutor’s stated reason is facially valid or otherwise credible, but only whether the prosecutor should be required to state a reason at all. (See Johnson, supra, 545 U.S. at p. 171 [“The first two Batson steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant’s constitutional claim. ‘It is not until the third step that the persuasiveness of the justification becomes relevant ....’” (original italics)].) As Chief Judge Easterbrook explained in Hooper v. Ryan (7th Cir. 2013) 729 F.3d 782, a “state court err[s] in concluding. . . that a prima facie case can be defeated by a prosecutor’s seemingly race-neutral explanation for the strikes .... [I]t is important to keep the sequence of proof straight. Evidence that raises an inference of discrimination creates a prima facie case; this in turn requires an explanation by the prosecutor and an evaluation by the judge whether the prosecutor is honest in articulating a non-racial reason for each challenge. To say ‘the prosecutor gave a reason, therefore there is no prima facie case’ is to scramble the analysis in a way that potentially eliminates the need to evaluate the prosecutor’s honesty.” (Id. at pp. 786-787.) In short, there are no half steps in the Batson framework.
The correct procedure is simply stated: At the first stage of the Batson inquiry, the defendant need only raise “an inference that discrimination has occurred.” (Johnson, supra, 545 U.S. at p. 170.) If a trial court denies a Batson motion at the first stage, the prosecutor may choose to stand pat on that ruling. But if the prosecutor chooses to give an explanation for a contested strike, the first-stage ruling becomes moot, and the Batson analysis moves to the third stage. At that point, the court must assess the prosecutor’s explanation in light of all relevant circumstances, and the defendant must show “it was more likely than not that the challenge was improperly motivated” in order to prevail. (Ibid.) Genuinely race-neutral reasons should be judicially validated, while improper or implausible reasons should be ferreted out. Either way, there is no reason to ignore the prosecutor’s explanation, and a trial court’s refusal to evaluate the explanation does not freeze the Batson inquiry at the first stage. If the record on appeal is adequate to decide whether the explanation is credible, then the reviewing court should conduct a proper third-stage analysis. (See People v. Lenix (2008) 44 Cal.4th 602, 622 [80 Cal.Rptr.3d 98, 187 P.3d 946].) Otherwise, the reviewing court should remand the matter to the trial court to determine if a third-stage analysis is practicable or if a new trial is required. (See People v. Johnson (2006) 38 Cal.4th 1096, 1103-1104 [45 Cal.Rptr.3d 1, 136 P.3d 804].)
*495 In this case, if the trial court had simply denied the Batson motion at the first stage, without more, I would affirm the ruling because P.M. “exhibited] obvious signs of being unsuitable for the jury.” (Maj. opn., ante, at p. 470; see id. at p. 468, fn. 4.) But the prosecutor, having volunteered his reasons, is entitled to benefit from the credibility of those reasons. The trial court should have evaluated, and credited, the prosecutor’s actual reasons, and this court should not compound the error by likewise ignoring what the prosecutor said.
In sum, I reject defendant’s Batson claim on the ground that the prosecutor’s stated reasons for striking P.M. were entirely legitimate and credible. In all other respects, I join the opinion of the court.